UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT


```
------------------------------ x
                               :
  UNITED STATES OF AMERICA,    :
                 Plaintiff,    :      Criminal No.
                               :  3:19-CR-00122 (MPS-1)
               vs.             :
                               :   September 24, 2019
                               :
  DAVID BOURNE,                :
                 Defendant.    :
                               :
------------------------------ x
```

Federal Building
450 Main Street
Hartford, Connecticut


<u>CHANGE OF PLEA HEARING</u>


(Transcription from Electronic Recording)


Held Before:

THE HON. DONNA F. MARTINEZ
United States Magistrate Judge



Transcription Services of
FALZARANO COURT REPORTERS, LLC
4 Somerset Lane
Simsbury, CT  06070
860.651.0258
www.falzaranocourtreporters.com

A P P E A R A N C E S:

    For the Plaintiff:

        OFFICE OF THE UNITED STATES ATTORNEY
        157 Church Street - 25th Floor
        New Haven, Connecticut 06510
        203-821-3700
        douglas.morabito@usdoj.gov
            BY:   DOUGLAS P. MORABITO, ESQ.
               Assistant U.S. Attorney


    For the Defendant:

        MILES GERETY, Attorney at Law
        P.O. Box 38
        Redding Ridge, Connecticut 06876
        203-241-8984
        miles.gerety@gmail.com
            BY:   MILES GERETY, ESQ.

```
 1              (Proceedings commenced at 11:05 a.m.)

 2

 3         THE COURT:  Good morning.  This is United States

 4  vs. David Bourne, B-O-U-R-N-E, 19-Criminal-122 assigned to

 5  Judge Shea.

 6         Will you identify yourselves?

 7         MR. MORABITO:  Good morning, your Honor.  Doug

 8  Morabito on behalf of the Government.  Judge, I just want

 9  to put on the record as well behind me to the left

10  standing is the victim of this offense, so he's obviously

11  been notified of his rights under the Crime Victims Act.

12         THE COURT:  All right.

13         MR. MORABITO:  Thank you.

14         THE COURT:  Good morning.

15         MR. GERETY:  Miles Gerety for Mr. Bourne, your

16  Honor.  Thanks.

17         THE COURT:  All right.  Be seated.

18         All right.  My understanding is that the

19  Defendant intends to enter a guilty plea to Count 2 of the

20  indictment charging him with violating 26 USC 5861, the

21  possession of an unregistered firearm.  Is that correct?

22         MR. GERETY:  Yes, your Honor.

23         THE COURT:  All right.  Please stand, sir.

24         Mr. Bourne, the first thing we have to do this

25  morning before we proceed to your guilty plea is take up
```

1   the matter of the referral of your case to me and your

2   consent to the referral.

3          There are two kinds of judges in the federal

4   system, magistrate judges and district judges.  The two

5   have different kinds of authority.  I'm a magistrate

6   judge.  Without the referral of a district judge and a

7   defendant's consent as a magistrate judge I could not

8   handle a proceeding such as this, a change of plea in a

9   criminal case in which a felony is charged.  The

10  proceeding would be handled by a district judge.

11         The district judge to whom your case is assigned

12  has referred your case to me to handle this proceeding and

13  to make a recommendation to him as to whether he should

14  accept your guilty plea.  The referral is only for the

15  sake of convenience; there is no other reason.  After this

16  your case will go back to the district judge for all

17  remaining proceedings.

18         I cannot take your guilty plea unless you

19  consent to my doing so.  You may consent to have this

20  proceeding before me or you may have this proceeding

21  before a district judge.

22         Have you discussed with your lawyer your consent

23  to having this proceeding before me?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  Do you want to have the proceeding

1   before me or would you prefer to have it before a district

2   judge?

3           THE DEFENDANT:  Before you, your Honor.

4           THE COURT:  Does the Government consent?

5           MR. MORABITO:  Yes, your Honor.

6           THE COURT:  DO you have a consent form?

7           MR. GERETY:  Yes, your Honor.

8           THE COURT:  All right.

9           If you want to have the proceeding before me you

10  may sign the consent form now.  If you don't want to have

11  the proceeding before me you should not sign the consent

12  form.  If you want to discuss it further with counsel you

13  may do that.

14          Defendant is signing the consent form.  I find

15  he understands he has a right to have this proceeding

16  before a district judge and has waived that right and

17  consented to proceed before a magistrate judge.

18          Counsel are signing the form and it may be

19  filed.

20          Mr. Bourne, before I can take your guilty plea

21  there are a number of questions that I must ask you while

22  you are under oath.  The purpose of the questions is to

23  make sure that you know what you're doing, that you

24  understand your rights, that you understand the

25  consequences of a guilty plea and that you want to plead

1  guilty because you are guilty.  If you don't understand

2  any of my questions please do not hesitate to say so and I

3  will reword the question.  All right?

4           THE DEFENDANT:  Yes, your Honor.

5           THE COURT:  If there is any time during the

6  proceedings that you want to talk to your lawyer just let

7  me know or let him know and I'll give you as much time to

8  speak with him confidentially as you want or need.  Do you

9  understood?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Place the Defendant under oath

12 please.

13          COURTROOM DEPUTY:  Yes, your Honor.

14          Please raise your right hand.

15

16          DAVID BOURNE, the Defendant herein, was

17          duly sworn by the Courtroom Deputy and testified

18          under oath as follows:

19

20          THE COURT:  You've now sworn to tell the truth.

21 If you answer any of my questions falsely you'll be

22 subject to the penalties for perjury or for making a false

23 statement.  Do you understand?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  What's your full name?

```
1                    THE DEFENDANT:  David Philip Bourne.

2                    THE COURT:  Have you ever used any other names?

3                    THE DEFENDANT:  No, your Honor.

4                    THE COURT:  Where were you born?

5                    THE DEFENDANT:  Langley, Virginia.

6                    THE COURT:  I understand that you're a United

7     States citizen because you were born in Virginia, but I'm

8     required to tell you this.  If you were not a United

9     States citizen your conviction of this offense could

10    result in your being deported, excluded from the United

11    States or denied citizenship under U.S. Immigration law.

12    Do you understand?

13                   THE DEFENDANT:  Yes, your Honor.

14                   THE COURT:  How old are you?

15                   THE DEFENDANT:  I'm 37, your Honor.

16                   THE COURT:  What schooling or education have you

17    had?

18                   THE DEFENDANT:  High school diploma.

19                   THE COURT:  Are you presently under the

20    influence of alcohol or drugs or medicine?

21                   THE DEFENDANT:  No, your Honor.

22                   THE COURT:  Have you had any alcohol or drugs or

23    medicine within the past 72 hours?

24                   THE DEFENDANT:  No, your Honor.

25                   THE COURT:  Are you now or have you recently
```

1    been under treatment by a doctor?

2            THE DEFENDANT:  No, your Honor.

3            THE COURT:  Are you now or have you recently

4    been under treatment by a psychiatrist, psychologist or

5    other mental health provider?

6            THE DEFENDANT:  Yes, your Honor.

7            THE COURT:  Tell me about that, please.

8            THE DEFENDANT:  I attend Wheeler Clinic for an

9    Explorer program.  I've also completed a men's empowerment

10   program and I see a therapist there monthly right now

11   until the Explorer program finishes, then it will be once

12   or twice a week.

13           THE COURT:  And what's the nature of the

14   program?

15           THE DEFENDANT:  Domestic violence.

16           THE COURT:  All right.  No meds or anything?  Is

17   this talk therapy?

18           THE DEFENDANT:  Yes, your Honor.

19           THE COURT:  All right.

20           Are you now or have you recently been treated

21   for substance abuse, drugs or alcohol?

22           THE DEFENDANT:  I am not under treatment for

23   substance abuse right now.

24           THE COURT:  Have you been recently?

25           THE DEFENDANT:  No, your Honor.

```
1                 THE COURT:  How do you feel today?  That is how
2    is your health today?
3                 THE DEFENDANT:  I seem well.
4                 THE COURT:  I beg your pardon?
5                 THE DEFENDANT:  I feel well.
6                 THE COURT:  All right.
7                 THE COURT:  Is your mind clear?
8                 THE DEFENDANT:  Yes, your Honor.
9                 THE COURT:  Are you able to understand
10   everything that's going on?
11                THE DEFENDANT:  Yes, your Honor.
12                THE COURT:  Counsel, have you had any difficulty
13   communicating with your client?
14                MR. GERETY:  None whatsoever, your Honor.
15                THE COURT:  Do you have any doubts at all as to
16   his competence to proceed?
17                MR. GERETY:  None.
18                THE COURT:  And Mr. Bourne, are you satisfied
19   with the services of your lawyer?
20                THE DEFENDANT:  Yes, your Honor.
21                THE COURT:  Have you received a copy of the
22   written charge that's been made against you in this case?
23                THE DEFENDANT:  Yes.
24                THE COURT:  Do you understand the charge?
25                THE DEFENDANT:  I do.
```

1          THE COURT:  Have you discussed it fully with

2    your lawyer?

3          THE DEFENDANT:  I have.

4          THE COURT:  The first and the most important

5    thing that you must understand is that you have a right to

6    plead not guilty and to persist in that plea of not guilty

7    even if you are guilty.  If you continue in a plea of not

8    guilty you'll be entitled to a trial by a jury with the

9    assistance of a lawyer at the trial and at every other

10   stage of the case.  If you cannot afford a lawyer the

11   Court will appoint a lawyer for you at no cost to you.  Do

12   you understand?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  If you were to go to trial you'd be

15   presumed innocent and the Government would have to prove

16   your guilt beyond a reasonable doubt.  If the Government

17   were to fail the jury would have to find you not guilty.

18   Do you understand?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  During your trial any witnesses for

21   the Government would have to come to court and testify in

22   your presence.  Your lawyer would have the right to cross

23   examine any witnesses for the Government and to object to

24   any evidence offered by the Government.  You understand?

25         THE DEFENDANT:  I do.

1        THE COURT:  At a trial you would have the right

2   to testify if you chose to testify, but you could not be

3   required to testify.  If you decided not to testify the

4   jury would be instructed that they could not hold that

5   against you.  Do you understand?

6        THE DEFENDANT:  Yes, your Honor.

7        THE COURT:  If the case went to trial you would

8   have the right to present evidence in your defense and to

9   require the attendance of witnesses to testify in your

10  defense.  However, you would not be required to present

11  any evidence or call any witnesses.  If you chose not to

12  present any evidence or call any witnesses, the jury would

13  be instructed that they could not hold that against you.

14  Do you understand?

15       THE DEFENDANT:  Yes, your Honor.

16       THE COURT:  If you plead guilty you will be

17  giving up your right to remain silent and not incriminate

18  yourself regarding the conduct involved in the plea.  If

19  you decide to plead guilty I'll have to ask you questions

20  about what you did to satisfy myself that you are guilty

21  and you'll have to answer my questions and admit your

22  guilt.  Do you understand?

23       THE DEFENDANT:  I do.

24       THE COURT:  When you do that you'll be waiving

25  your privilege against self-incrimination.  Do you

1   understand what I mean?

2            THE DEFENDANT:  Yes, your Honor.

3            THE COURT:  If you plead guilty and your plea of

4   guilty is accepted by the district judge you'll be giving

5   up your constitutional right to a jury trial and all the

6   other rights I've just discussed.  There will be no trial

7   of any kind.  You'll be found guilty on the basis of your

8   guilty plea.  Do you understand?

9            THE DEFENDANT:  Yes, your Honor.

10           THE COURT:  Are you willing to give up your

11  right to a trial and the other rights I've just discussed?

12           THE DEFENDANT:  Yes, your Honor.

13           THE COURT:  Is there a written plea agreement,

14  Mr. Morabito?

15           MR. MORABITO:  There is, your Honor.

16           THE COURT:  Have you read this agreement, Mr.

17  Bourne?

18           THE DEFENDANT:  I have.

19           THE COURT:  Do you understand it?

20           THE DEFENDANT:  Yes, your Honor.

21           THE COURT:  Do you want to sign it?

22           THE DEFENDANT:  Yes, your Honor.

23           THE COURT:  All right.  Have a seat.  You may do

24  that now.

25           (Pause.)

1          THE COURT:  All right.  I'm going to ask the

2    Government to summarize the plea agreement.  The Defendant

3    and counsel have signed it.

4          MR. MORABITO:  Your Honor, would you like me to

5    cover the elements and penalties at this time?

6          THE COURT:  You may wait to do that.

7          MR. MORABITO:  Okay.  Thank you.

8          Now, Judge, on page 1 of the plea agreement it

9    outlines the elements which I know we'll cover a bit later

10   in the proceeding.

11         On to page 2, for most of page 2 it covers the

12   penalties of this particular offense which again I know

13   we'll cover a bit later in the proceeding.

14         At the bottom of page 2 and on to page 3 there

15   is a paragraph discussing the applicability of the

16   sentencing guidelines which I believe your Honor will

17   cover a bit later in the proceeding as well.

18         On page 3 there is a provision regarding

19   acceptance of responsibility where at this time the

20   Government is agreeing that the Court reduce by two levels

21   Mr. Bourne's adjusted offense level based on his prompt

22   recognition and affirmative acceptance of responsibility

23   for this offense.  Additionally, because Mr. Bourne

24   qualifies for the additional one point the Government

25   intends to either make a written motion or an oral motion

1   at the time of sentencing.

2          At the bottom of page 3 and onto page 4 is what

3   the parties believe the guideline stipulation to be.  In

4   summary, Judge, the parties believe that Mr. Bourne is an

5   adjusted offense level of 19 with a criminal history

6   category of 3 that results in a sentencing range of 33 to

7   41 months of imprisonment, a fine range of 10,000 to

8   $100,000.  The parties additionally agree that Mr. Bourne

9   is also subject to a supervised release term of 1 to 3

10  years.

11         Notably the Government and Mr. Bourne reserve

12  their rights to seek a departure or non-guideline sentence

13  and both sides reserve their right to object to a

14  departure or non-guideline sentence.

15         Importantly Mr. Bourne understands also on page

16  4 that the Court is not bound by this agreement on the

17  guideline ranges specified above and he further

18  understands he couldn't withdraw his guilty plea if the

19  Court imposed a sentence outside any of the ranges set

20  forth in this agreement.

21         At the bottom of page 4 and onto page 5 there's

22  a discussion of waiver of trial rights and consequences of

23  a plea which your Honor just covered with Mr. Bourne

24  assuming the plea is entered today.  There's also on page

25  5 a waiver of statute of limitations provision where Mr.

1  Bourne agrees that should the conviction again if accepted

2  today following a plea be vacated for any reason, any

3  prosecution not time barred by the statute of limitations

4  on the date of the signing of this agreement today,

5  including any counts the Government is agreeing to dismiss

6  can be commenced or reinstated even if they're beyond the

7  applicable statute of limitations.

8         There is also on page 5 a waiver of the right to

9  challenge the conviction where Mr. Bourne acknowledges

10 under certain circumstances he's entitled to challenge his

11 conviction.  However, by pleading guilty he's waiving his

12 right to appeal or collaterally attack his conviction in

13 any proceeding, including under 28 United States Code

14 Sections 2255 or 2241.

15         At the bottom of page 4 -- excuse me 5 and on to

16 page 6, your Honor, is a waiver of right to appeal to

17 collaterally attack the sentence paragraph where again Mr.

18 Bourne acknowledges under certain circumstances he could

19 challenge his sentence.  In consideration for the benefits

20 under this agreement Mr. Bourne is agreeing not to appeal

21 or collaterally attack the sentence in any proceeding so

22 long as it doesn't exceed 41 months of imprisonment, a 3-

23 year term of supervised release, a fine and a $100 special

24 assessment even if the Court imposed such a sentence based

25 on analysis different from the parties' guideline

1   stipulation.

2          On page 6 there is a provision regarding

3   acknowledgement of guilt and voluntariness of plea where

4   again Mr. Bourne acknowledges he's entering this agreement

5   and pleading guilty freely and voluntarily because he is

6   in fact guilty of the conduct in Count 2 of the

7   indictment.

8          Also within that provision, your Honor, Mr.

9   Bourne is acknowledging he's not a prevailing party within

10  the meaning of the Hyde Amendment with respect to the

11  count of conviction or Count 1 which the Government

12  intends to dismiss at the time of sentencing.

13         At the bottom of page 6 there is a scope of the

14  agreement provision where Mr. Bourne acknowledges this

15  agreement is limited to the undersigned parties and can't

16  bind any other federal authority or any state or local

17  authority.

18         On page 7 there is a paragraph discussing the

19  potential collateral consequences which I believe your

20  Honor covers but I can cover it if your Honor wants me to

21  now.

22         THE COURT:  Collateral consequences concerning?

23         MR. MORABITO:  Concerning a plea of guilty today

24  if accepted by the Court.

25         THE COURT:  Why don't you include that.

1          MR. MORABITO:  Thank you, Judge.

2          Mr. Bourne understands that he would be

3  adjudicated guilty of the offense to which he intends to

4  plead guilty which is Count 2, and it could deprive him of

5  certain rights such as the right to hold public office, to

6  serve on a jury, possess firearms and ammunition, and in

7  some states the right to vote.

8          He further understands as your Honor advised him

9  earlier that if he weren't a citizen of the united States

10 a plea of guilty could result in his removal from the

11 U.S., denial of citizenship or denial of admission to the

12 United States in the future, and further understands that

13 pursuant to the Justice for All Act the Federal Bureau of

14 Prisons or U.S. Probation Office may collect a DNA sample

15 for analysis and indexing.

16         And then finally Mr. Bourne understands that the

17 Government's reserved its right to notify any state or

18 federal agency for which he is licenses or which he does

19 business, as well as any current or future employer of the

20 fact of this conviction.

21         Also on page 7 is a satisfaction of federal

22 criminal liability where again Mr. Bourne's guilty plea if

23 accepted by your Honor satisfies his federal criminal

24 liability here in the District of Connecticut as a result

25 of his participation in the conduct in this case which

1   forms the basis of the indictment.

2          Judge, I would note that that paragraph doesn't

3   indicate the Government intends to dismiss Count 1 at the

4   time of sentencing but I'll put on the record and

5   represent to the Court and Mr. Bourne and counsel that

6   that is what the Government will do at the time of

7   sentencing.

8          Finally, there is a no other promises provision

9   where Mr. Bourne acknowledges there are no other promises,

10  agreements or conditions entered into other than those set

11  forth in the plea agreement and what I just put on the

12  record for your Honor, and none would be unless forth in

13  writing and signed by all the parties.

14          There's a signature block for myself and then

15  page 8 has a signature block for Mr. Bourne and Mr.

16  Gerety.

17          THE COURT:  And Mr. Bourne and Mr. Gerety have

18  signed?

19          MR. GERETY:  Yes.

20          THE COURT:  And you have signed as well?

21          MR. MORABITO:  I'm signing right now, your

22  Honor.

23          THE COURT:  All right.

24          MR. MORABITO:  I have just signed it.

25          THE COURT:  Mr. Bourne, stand please, sir.

1        I'm going to ask you some questions focused at

2   your understanding of the plea agreement.  The rules

3   require me to focus in on two sections in particular, so

4   I'm going to begin with those.  They're on page 5 and 6.

5   Page 5, do you have that before you?

6        MR. GERETY:  Yes, your Honor.

7        THE COURT:  All righty.

8        MR. GERETY:  I'm using a copy so that we can

9   mark it up as we go.

10        THE COURT:  All right.

11        So the first section is Waiver of Right to

12   Challenge Conviction, the second is Waiver of Right to

13   Appeal or Collaterally Attack Sentence.  You see where I

14   am?

15        THE DEFENDANT:  I do.

16        THE COURT:  You've been over those with your

17   lawyer?

18        THE DEFENDANT:  Yes, your Honor.

19        THE COURT:  As I said, I have to make a

20   determination in court that you understand those

21   provisions.

22        Under certain circumstances a defendant might be

23   able to commence a legal challenge to his conviction

24   and/or his sentence.  He might be able to appeal his case

25   to a higher court making an argument that this court, the

1  District Court made some mistake and asking the appellate

2  court to aid him in correcting that mistake.  He might

3  also be able to file what's called a collateral attack

4  against his conviction or his sentence.

5         A collateral attack is when a defendant files a

6  separate lawsuit usually called a habeas in which the

7  defendant contends that there's something legally wrong or

8  insufficient with the conviction or sentence and asks the

9  court to set it aside.  Do you understand a defendant

10 might ordinarily have rights along those lines?

11        THE DEFENDANT:  Yes, your Honor.

12        THE COURT:  You've given up some of those rights

13 as part of your plea deal with the Government and I want

14 to make sure you understand.

15        First, you've given up your right to make any

16 legal attack against your conviction either by way of

17 appeal or collaterally attack.  So you will stand

18 convicted of this offense if you enter a guilty plea and

19 the district judge accepts that plea.  You understand?

20        THE DEFENDANT:  Yes, your Honor.

21        THE COURT:  As for your sentence you give up

22 your right to appeal or collaterally attack your sentence

23 as long as the judge doesn't give you more than 41 months

24 in jail, 3 years of supervised release, a fine of an

25 unspecified amount, and a $100 special assessment

1    regardless of how or why the judge determines that that

2    should be your sentence.  Do you understand?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  I'm now going to ask you questions

5    about the entire plea agreement.

6              The prosecutor just said that part of the plea

7    agreement is that at your sentencing pursuant to this plea

8    agreement, the prosecution will move to dismiss Count 1 of

9    the indictment.

10             In addition to that the plea agreement is set

11   forth in this letter which the prosecution just

12   summarized.  Does the prosecutor's summary fully and

13   accurately describe your understanding of the plea

14   agreement with the Government?

15             THE DEFENDANT:  Yes, your honor.

16             THE COURT:  Other than the promises contained in

17   the written agreement and the prosecutor's statement that

18   the Government will move to dismiss Count 1 at sentencing,

19   assuming you enter a guilty plea, has anyone made any

20   other promises to you that have caused you to want to

21   plead guilty?

22             THE DEFENDANT:  No, your Honor.

23             THE COURT:  Has anyone made any promises to you

24   as to what your sentence will be?  Has anyone promised you

25   a specific sentence?

```
1                THE DEFENDANT:  No, your Honor.

2                THE COURT:  Has anybody threatened you in any

3   way to get you to plead guilty?

4                THE DEFENDANT:  No, your Honor.

5                THE COURT:  Has anybody tried to coerce or

6   intimidate you into pleading guilty?

7                THE DEFENDANT:  No, your Honor.

8                THE COURT:  Is anybody forcing you to plead

9   guilty?

10               THE DEFENDANT:  No.

11               THE COURT:  Do you want to plead guilty because

12  you choose to plead guilty voluntarily of your own free

13  will?

14               THE DEFENDANT:  Yes, your Honor.

15               THE COURT:  The agreement may be filed.

16               (Pause.)

17               THE COURT:  I'm now going to address you

18  regarding the sentence that can be imposed if you go ahead

19  and enter a guilty plea.

20               First, the judge could send you to jail for as

21  long as 10 years.  Do you understand?

22               THE DEFENDANT:  Yes, your Honor.

23               THE COURT:  The judge also may impose a term of

24  supervised release for as long as 3 years to begin at the

25  end of any jail term.  If you're placed on supervised
```

1  release, which is a form of court supervision,

2  you'll be required to satisfy certain conditions while on

3  supervised release, including that you not commit any

4  crime.  If you were to violate any of your supervised

5  release conditions you could be required to serve a

6  further term of imprisonment of up to two years per

7  violation with no credit for any time you already spent on

8  supervised release.  You could also be fined as much as

9  $250,000.

10          You could be required to pay the costs to the

11  United States Government of any imprisonment, probation or

12  period of supervised release.  If a sentence of

13  imprisonment is imposed the rate is $2,036.92 a month.  If

14  a sentence of probation or supervised release is imposed

15  the rate is $294.60 a month.  If a fine of more than

16  $2,500 is imposed you can be required to pay interest on

17  any fine amount that is not paid within 15 days of your

18  sentencing.  In addition, you'll be required to pay a

19  mandatory special assessment of $100.

20          Counsel, are either restitution or forfeiture

21  applicable here?

22          MR. MORABITO:  Yes, your Honor.

23          THE COURT:  Do you agree?

24          MR. GERETY:  Yes.

25          THE COURT:  Is my statement of the penalties

1    correct?

2            MR. MORABITO:  Yes, your Honor.

3            MR. GERETY:  Yes, your Honor.

4            THE COURT:  And Mr. Bourne, do you understand

5    these consequences of your guilty plea?

6            THE DEFENDANT:  Yes, your Honor.

7            THE COURT:  Now I'm going to address you

8    regarding the sentencing guidelines.  The United States

9    Sentencing Commission has issued guidelines that apply to

10   your case.  Have you and your lawyer talked about how the

11   sentencing guidelines might apply to you?

12           THE DEFENDANT:  Yes, your Honor.

13           THE COURT:  The sentencing guidelines are

14   advisory guidelines under which the Court calculates a

15   recommended sentence using the different facts of each

16   case.  The calculation results in a guideline range of

17   possible sentences.  The sentencing judge must consider

18   the guideline range as a recommendation that he sentence

19   you within the range.  The sentencing judge also must

20   consider any possible grounds for departure from the

21   guidelines.  He's permitted to tailor your sentence in

22   light of certain statutory sentencing factors outside the

23   guidelines, but he's required to consider the sentencing

24   guidelines in deciding what sentence to give you.

25           The guidelines are not mandatory; the guidelines

1    are advisory.

2              The guideline range for your case will be

3    determined after a presentence report is prepared by the

4    United States Probation Office, and you, your lawyer and

5    the U.S. Attorney's office have had an opportunity to

6    comment on the presentence report.  Until then no one can

7    be sure what the guideline range will be.  Do you

8    understand?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Now your lawyer might have advised

11   you of his opinion as to what the guideline range probably

12   will be, but he could be wrong.  Do you understand?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  If it turns out that the guideline

15   range is higher than you expected, the mere fact that you

16   expected to be sentenced under a lower guideline range

17   will not be a basis for withdrawing your guilty plea or

18   overturning your sentence.  Do you understand?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  Now, once again I understand that

21   you want to plead guilty to Count 2 of the indictment

22   charging you with the possession with the possession of an

23   unregistered firearm in violation of 18 USC Section

24   5861(d).  To prove that you're guilty of this offense the

25   Government would have to prove beyond a reasonable doubt

1  certain things we call elements of the offense.  I'm going

2  to ask the prosecutor to list the elements.

3          MR. MORABITO:  Thank you, Judge.

4          First, the Government would need to prove that

5  Mr. Bourne knowingly possessed an NFA firearm --

6          THE COURT:  What is an NFA?

7          MR. MORABITO:  That's a National Firearms

8  Registration -- National Firearms -- I want to get it

9  exactly right, your Honor, Registration and Transfer

10  Record.  And within that element the Government would have

11  to show that what Mr. Bourne -- again, what Mr. Bourne

12  possessed was a firearm here, the Government alleges in

13  the indictment it is a destructive device as that term is

14  defined in 21 United States Code Section 5845(a) and (f)

15  and that Mr. Bourne knew of the characteristics of the

16  firearm, that is he possessed a destructive device.

17          Two, that again the firearm was and could

18  readily have been put in operating condition.

19          And three, that the firearm was not registered

20  to the Defendant, Mr. Bourne, in the National Firearms

21  Registration and Transfer Record.

22          THE COURT:  I'm about to ask you, Mr. Bourne,

23  what you did that shows you're guilty of this offense to

24  which you're offering to plead guilty.  Before I do that I

25  want to give you another opportunity to speak with your

1  lawyer if you want or need to speak with him.  If you have

2  any questions or concerns that you want to discuss with

3  your lawyer before we proceed, take the time now and talk

4  to him.

5          THE DEFENDANT:  I'm ready, your Honor.

6          THE COURT:  All right.  Tell me in your own

7  words what you did.

8          THE DEFENDANT:  I made a very poor decision.  I

9  possessed a destructive device which was a pipe bomb and I

10 drove by Mr. Ansted's (phonetic) home and threw it into

11 the back of his truck.

12         THE COURT:  Who was that?

13         THE DEFENDANT:  He is in the courtroom to my

14 rear.

15         THE COURT:  He's somebody that what?

16         THE DEFENDANT:  I believe at the time was having

17 relations with my wife and I -- like I said I made a poor

18 decision but I drove by his home and threw a pipe bomb

19 into the back of his truck which did explode in the back

20 of his truck and I drove away from the incident.

21         THE COURT:  So was this firearm registered?

22         THE DEFENDANT:  No, your Honor.

23         THE COURT:  All right.  I'm going to ask the

24 prosecutor to summarize their proof that shows that you're

25 guilty.  I want you to listen very carefully to him

1  because when he finishes I'm going to ask you if you agree

2  or disagree with their evidence, all right?

3           THE DEFENDANT:  Yes, your Honor.

4           THE COURT:  Have a seat.

5           MR. MORABITO:  Thank you, Judge.

6           Judge, the evidence in this matter would consist

7  of both testimony of law enforcement officers and lay

8  witnesses.  It would consist of electronic evidence in the

9  form of cellsite analysis of Mr. Bourne's cellular

10  telephone.  It would consist of photographs of the scene

11  of the explosion on January 2nd, 2019 outside of Mr.

12  Ansted's home.  It would also include a forensic analysis

13  of pipe bomb fragments recovered at the scene on that same

14  date.

15           In summary, Judge, the evidence would show that

16  again on January 2nd, 2019 the Connecticut State Police

17  responded to West Hartland, Connecticut to investigate

18  reports of a large explosion in the area of Mr. Ansted's

19  home.  State Police Officers responded to that scene,

20  spoke with Mr. Ansted and others who indicated that -- who

21  would testify that they heard a car pull up, a door open

22  and then the door closed and a car drive off, and then

23  shortly thereafter they heard an explosion.  Mr. Ansted I

24  believe would testify if need be that he then went outside

25  and realized that there had been what appeared to be an

1  explosion in or around his pickup truck.

2       The Connecticut State Police Officers along with

3  other law enforcement officers as I indicated photographed

4  the scene.  That would be offered into evidence.  They

5  also recovered fragments of what they believed to be the

6  destructive device as Mr. Bourne indicated, the pipe bomb,

7  for additional analysis.

8       The Government would also offer the testimony of

9  two witnesses, one of whom would be -- is a defendant in

10  another matter but who would seek to receive credit, for

11  lack of a better description, Judge, for his testimony.

12  They would both testify under oath that Mr. Bourne made

13  admissions to them that he constructed a pipe bomb from

14  PVC piping and filled it with black powder before he

15  capped it off, your Honor.

16       Mr. Bourne also indicated to these two

17  individuals that he used what's known as a cannon wick,

18  which is a bit of a longer wick so he'd have more time

19  once it was lit so that he could get away from the scene.

20  These two witnesses would also testify that Mr. Bourne

21  indicated to them that he threw the pipe bomb in the back

22  of Mr. Ansted's truck, drove off, and about a half mile

23  down the road he heard the explosion.

24       The Government would also offer a third witness,

25  your Honor, who would testify that Mr. Bourne attempted to

1    get him, the witness, to provide a false alibi at the time

2    that this pipe bomb went off at Mr. Ansted's home.  That

3    witness would testify more specifically that Mr. Bourne

4    indicated that he should tell law enforcement that he was

5    at -- Mr. Bourne was at this witness' home at the time

6    that this event occurred.

7         The Government would also offer an expert

8    witness from the FBI who would testify that he conducted

9    analysis of Mr. Bourne's cellular telephone to include

10   cellsite analysis and that he would be prepared to testify

11   that his mapping of Mr. Bourne's cellphone showed that it

12   moved from his residence to the location of Mr. Ansted's

13   home at the time of the pipe bomb explosion and then

14   proceeded to leave that area immediately after the pipe

15   bomb explosion.

16        Additionally, the Government would offer a law

17   enforcement witness who would testify regarding the fact

18   that there was no -- that this particular destructive

19   device again, the pipe bomb was not registered with the

20   National Firearms Registration and Transfer Record,

21   thereby establishing the third element of the charge.

22        And then finally, Judge, the Government would

23   offer a law enforcement witness that would testify as to

24   the characteristics of the pipe bomb which would then

25   permit the Government to argue that it falls within the

```
1   statute thereby satisfying another element of the offense.

2          I think based on all that, Judge, the Government

3   would prove beyond a reasonable doubt Mr. Bourne is guilty

4   of the offense in Count 2 of the indictment.

5          THE COURT:  Mr. Bourne, did you hear everything

6   the prosecutor just told me?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Do you agree with everything he

9   said?

10         THE DEFENDANT:  Yes, your Honor.

11         THE COURT:  Is there anything he said with which

12  you do not agree?

13         THE DEFENDANT:  No, your Honor.

14         THE COURT:  Based on everything I've seen and

15  heard it appears to me that you want to plead guilty

16  because you believe you are guilty and that you choose to

17  plead guilty freely and voluntarily.  Is that correct?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  I'm about to take your guilty plea.

20  I'll have the charge read to you unless you waive or give

21  up the reading.  Do you waive the reading?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  Mr. Clerk, take the plea.

24         COURTROOM DEPUTY:  Yes, your Honor.

25         In the case of the United States of America vs.
```

1   David Bourne, Criminal Number 3:19-CR-122 MPS, as to Count

2   2 of the indictment charging violation of Title 26 United

3   States Code Section 5861(d), how do you wish to plead?

4           THE DEFENDANT:  Guilty.

5           COURTROOM DEPUTY:  Your Honor, he pleads guilty

6   to Count 2 of the indictment.

7           THE COURT:  On the basis of the Defendant's

8   answers to my questions in open court today, the remarks

9   of Defense counsel and the prosecution, I find that the

10  Defendant is fully competent and capable of entering an

11  informed plea; that the Defendant understands the nature

12  of the charge against him; that he knows his right to a

13  jury trial and his other trial-related rights; he knows

14  the maximum possible sentence and the other possible

15  consequences of his guilty plea.

16          I further find that the Defendant's plea of

17  guilty is a knowing and voluntary plea supported by an

18  adequate factual basis as to each of the essential

19  elements.  I'm going to recommend that the guilty plea be

20  accepted and refer the case to the Probation Office for

21  investigation.  It is so ordered.

22          You may sit down, sir.

23          Mr. Bourne, sometime after this hearing you will

24  be interviewed by a U.S. Probation Officer.  Either that

25  officer or one of his or her colleagues later will prepare

1 | a presentence report which will be submitted to the Court

2 | to assist in determining a sentence for you.

3 | You should remember that generally your

4 | cooperation with the Probation Office will be beneficial

5 | to you.  It's also important that you carefully discuss

6 | with your lawyer what you say to the Probation Office

7 | because the presentence report is very important in

8 | determining your sentence.

9 | Counsel for either party may submit its version

10 | of the offence to the Probation Office.

11 | Mr. Bourne, you have a right object to items

12 | contained in or left out of the presentence report.  Your

13 | lawyer must read and review the presentence report with

14 | you prior to the date set for submitting objections to the

15 | report.

16 | After receiving the lawyers' objections the

17 | Probation Officer shall conduct any further investigation

18 | and make any revisions to the presentence report that

19 | might be necessary.  The revised presentence report then

20 | will then be disclosed to the Court and to counsel.

21 | Your lawyer must read and review the presentence

22 | report with you prior to your sentencing.

23 | The presentence report must be disclosed to the

24 | Defendant, to counsel for the Defendant and to the

25 | Government on or before November 5th, 2019.  Objections are

1   due on or before November 10ᵗʰ.  The amended report must be

2   disclosed to counsel and the Court on or before November

3   29ᵗʰ.  Sentencing is December 17ᵗʰ, 2019 at 10:00 o'clock in

4   the morning in Judge Shea's courtroom in this courthouse.

5           Anything else we should do?

6           MR. MORABITO:  No, your Honor.

7           MR. GERETY:  No, your Honor.  I'm sorry.

8           THE COURT:  Do you have an application for

9   release?

10          MR. GERETY:  Yes.  I would request that he be

11  released.  He has been on state probation running

12  concurrently with the supervision and has done, from

13  everything I've heard, extremely well and is complying

14  with all the conditions.

15          And in light of the nature of this case, it rose

16  out of a difficult divorce and custody issues, he's

17  continuing participation on the Evolve program which is a

18  -- you know, it usually works with family violence but in

19  his case he's pled to violating a protective order,

20  contact he's not supposed to have.  That's very beneficial

21  to him and I believe to everyone concerned.  So I would

22  request that he remain out of custody and continue to

23  participate and abide by all those conditions.

24          He's been on a GPS monitor and has been

25  completely compliant.  Vicky Stackpole, his Probation

1    Officer, I believe has been very satisfied by his

2    performance so -- not only performance, you know,

3    following the rules.  So I'd ask that he remain free.

4              THE COURT:  Does the Government have any

5    information that he's a risk of flight or a danger?

6              MR. MORABITO:  No, your Honor.

7              THE COURT:  All right.  Conditions may stay in

8    place.

9              You understand that failure to appear for

10   sentencing as required is a separate criminal offense for

11   which additional penalties may apply?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  All the conditions on which you've

14   been released up to now also continue to apply and the

15   penalty for violating those conditions can be very severe.

16   You understand that?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  All right.

19             All right.  I've signed the appropriate

20   paperwork.  If there's nothing else we're in recess.

21             MR. MORABITO:  Thank you, your Honor.

22             MR. GERETY:  Thank you, your Honor.

23             THE DEFENDANT:  Thank you, your Honor.

24             (Proceedings adjourned at 11:57 a.m.)

25

1                          <u>CERTIFICATE</u>

2

3               I hereby certify that the foregoing 35

4   pages are a complete and accurate transcription to the

5   best of my ability of the electronic recording of the

6   Change of Plea Hearing in re:  UNITED STATES OF AMERICA

7   vs. DAVID BOURNE, Criminal No. 3:19-CR-00122 (MPS-1) held

8   before The Hon. Donna F. Martinez, United States

9   Magistrate Judge, in Hartford, Connecticut, on September

10  24, 2019.

11

                    *Suzanne Benoit*
12  _____

13  Suzanne Benoit, Transcriber          Date: 10/14/19

14

15

16

17

18

19

20

21

22

23